**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

STEVEN WANG, AKA Shui
Cheng Wang,
*Defendant-Appellant*.

Nos. 17-10275
17-10277

D.C. Nos.
1:10-cr-00085-FMTG-1
1:14-cr-00063-FMTG-1

OPINION

Appeals from the United States District Court
for the District of Guam
Frances Tydingco-Gatewood, Chief District Judge,
Presiding

Argued and Submitted October 23, 2019
University of Hawaii at Manoa

Filed December 16, 2019

Before: SUSAN P. GRABER, MILAN D. SMITH, JR.,
and PAUL J. WATFORD, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

# SUMMARY[*]

## Criminal Law

The panel reversed and vacated sentences imposed on the defendant at the same hearing in two cases – one in which the defendant pleaded guilty to mail fraud, visa fraud, money laundering, and willful failure to pay over tax; the other in which the defendant pleaded guilty to conspiracy to commit visa fraud.

The panel held that because the defendant's mail fraud count established a visa fraud offense specifically covered by U.S.S.G. § 2L2.1, the district court, in calculating the offense level for the mail fraud count, erred by applying the general-fraud Guideline, U.S.S.G. § 2B1.1, rather than applying the visa fraud Guideline, § 2L2.1, pursuant to the cross-reference set forth in U.S.S.G. § 2B1.1(c)(3).

The panel held that the error was plain, affected the defendant's substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings.

Remanding for resentencing, the panel outlined how the district court generally should approach re-sentencing of the defendant's multiple counts pursuant to U.S.S.G. § 5G1.2.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Gia Kim (argued), Deputy Federal Public Defender; Hilary Potashner, Federal Public Defender; Federal Public Defender's Office, Los Angeles, California; for Defendant-Appellant.

Stephen F. Leon Guerrero (argued), Assistant United States Attorney; Shawn N. Anderson, United States Attorney; Office of the United States Attorney, Districts of Guam and the Northern Mariana Islands, Hagatna, Guam; for Plaintiff-Appellee.

## OPINION

M. SMITH, Circuit Judge:

Defendant-Appellant Steven Wang (Wang) appeals his sentences imposed in two cases that the district court sentenced in the same hearing. In the first case, Wang pleaded guilty to mail fraud, visa fraud, money laundering, and willful failure to pay over tax. In the second case, Wang pleaded guilty to conspiracy to commit visa fraud. The key issue in these appeals is whether the district court properly calculated the offense level for Wang's mail fraud conviction pursuant to the United States Sentencing Guidelines Manual (U.S.S.G. or the Guidelines).[1]

---

[1] The district court used the 2013 Guidelines to sentence Wang. Generally, we review a sentence based on the Guidelines in effect on the date of the defendant's sentencing. *See United States v. Cuevas-Lopez*, 934 F.3d 1056, 1058 n.1 (9th Cir. 2019) (citations omitted). However,

The district court applied § 2B1.1—the offense Guideline that covers general fraud offenses—to Wang's mail fraud conviction pursuant to 18 U.S.C. § 1341. By applying § 2B1.1, the court ultimately calculated a Guidelines imprisonment range of 46 to 57 months. The court imposed a 57-month term in Wang's first case, and a consecutive 57-month term in his second case, resulting in a total sentence of 114 months. Wang challenges the district court's application of § 2B1.1 to his mail fraud conviction and the imposition of consecutive sentences.

We hold that the district court erred by applying § 2B1.1 to calculate the offense level for Wang's mail fraud count of conviction. The allegations underlying this count established an immigration visa fraud offense expressly covered by § 2L2.1. Therefore, the district court should have followed the § 2B1.1(c)(3) cross-reference and applied § 2L2.1. The district court's error was plain, and it substantially affected the Guidelines range the court used to sentence Wang. We reverse and vacate Wang's sentences, and remand for re-sentencing.

---

the 2016 Guidelines version in effect at Wang's sentencing permitted the district court to use the Guidelines version in effect on the date when Wang committed the underlying offenses to avoid *ex post facto* issues. *See* U.S.S.G. § 1B1.11(b)(1) (2016). Because the underlying offenses occurred severally while different Guidelines versions were in effect, the district court applied the 2013 Guidelines to all Wang's offenses as the version in effect on the date of the latest offense. *Id.* § 1B1.11(b)(3) (2016). Thus, all Guidelines citations are to the 2013 version unless otherwise indicated.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.  The Indictments and Guilty Pleas

Wang is a naturalized United States citizen and a Guam resident.  Between July 2005 and October 2009, he defrauded the United States into issuing H-2B nonimmigrant visas for 173 foreign construction workers in Guam.  As part of his scheme, Wang knowingly mailed I-129 petitions to the United States Citizenship and Immigration Services (USCIS) with false statements made under oath.

In 2011, a federal grand jury returned a 128-count superseding indictment against Wang.  Wang pleaded guilty to one count each of mail fraud in violation of 18 U.S.C. § 1341, visa fraud in violation of 18 U.S.C. § 1546(a), money laundering in violation of 18 U.S.C. § 1957, and willful failure to pay over tax in violation of 26 U.S.C. § 7202.  For sentencing purposes, he stipulated to the factual allegations for all similar counts in the superseding indictment.  Wang also agreed to cooperate with federal law enforcement, and the Government agreed to recommend a substantial assistance departure for his cooperation if warranted.  The district court accepted Wang's plea in February 2012.

While he awaited sentencing in the first case, a federal grand jury indicted Wang in November 2014 for conspiracy to commit visa fraud and visa fraud.  These charges stemmed from Wang's attempt to secure an L-1 nonimmigrant visa between December 2012 and May 2014.  Wang provided false employment information to the federal government in an I-129 petition.  In August 2015, Wang pleaded guilty to one count of conspiracy to commit visa fraud.  He again agreed to cooperate with federal law enforcement, and again the Government agreed to move for a below-Guidelines

sentence for his substantial assistance.  The district court accepted this plea.

## II. Sentencing

The district court sentenced Wang's cases together at a June 2017 hearing using the Guidelines range that a probation officer (PO) calculated.[2]

At the hearing, the PO first grouped Wang's offenses, placing the first case's offenses into Group 1 and the second case's offense into Group 2.  The PO then calculated the offense level for each offense within each group.  In relevant part, the PO calculated an offense level of 29 for Wang's Group 1 mail fraud conviction by applying § 2B1.1.  The PO calculated a base offense level of seven pursuant to § 2B1.1(a)(1).  The PO then added 20 levels pursuant to § 2B1.1(b) as specific offense characteristics.[3]  As with all Wang's convictions, the PO added two levels as a § 3A1.1(b)(1) victim-related adjustment.  Wang's mail fraud conviction thus had the highest Group 1 offense level.  His money laundering conviction had the next highest Group 1 offense level of 23.  The PO then computed a Group 2 offense level of 11 for Wang's visa fraud conspiracy conviction.

---

[2] Wang's final pre-sentencing reports (PSRs) relied on the same Guidelines and made mostly identical calculations as the PO did at the hearing.  Thus, we do not discuss the PSRs in greater detail.

[3] The PO identified the following § 2B1.1(b) specific offense characteristics: (1) 14 levels pursuant to § 2B1.1(b)(1)(H) based on the district court's finding that Wang received a $421,600 gain, (2) four levels pursuant to § 2B1.1(b)(2)(B) for an offense involving 50 or more victims, and (3) two levels pursuant to § 2B1.1(b)(10)(B) because a substantial part of the scheme occurred outside the United States.

Comparing Wang's grouped offenses, the PO calculated a total offense level of 29. Based on Wang's Criminal History Category (I), the PO calculated a pre-departure Guidelines range of 87 to 108 months. Accounting for the six-level substantial assistance downward departure the district court had granted for Wang's cooperation pursuant to § 5K1.1, the PO calculated Wang's post-departure Guidelines range as 46 to 57 months for all counts. The district court imposed 57-month imprisonment terms in each of Wang's cases, with the terms to run consecutively.[4] Wang timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We apply plain error review when a defendant raises a procedural objection to his sentence that he did not raise in the district court, like the objection that Wang raises to the application of § 2B1.1 to the mail fraud conviction.[5] *Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Campbell*, 937 F.3d 1254, 1256 (9th Cir. 2019). "Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights. If these three conditions are met, [we] may then exercise [our] discretion to grant relief if the error seriously

---

[4] The district court also sentenced Wang to three years of supervised release and ordered him to pay restitution in the total amount of $1,905,446.57. Wang does not challenge these aspects of his sentences on appeal.

[5] Relying on *United States v. Evans-Martinez*, 611 F.3d 635, 642 (9th Cir. 2010), Wang contends that we should review de novo because his challenge to the district court's application of § 2B1.1 involves a pure question of law. "To the extent we have discretion not to apply plain error review, we decline to exercise that discretion in this instance." *United States v. Burgum*, 633 F.3d 810, 812 n.2 (9th Cir. 2011).

affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Hammons*, 558 F.3d 1100, 1103 (9th Cir. 2009) (citations and internal quotation marks omitted).

## ANALYSIS

## I. The District Court Erred by Applying § 2B1.1 Instead of § 2L2.1 to Wang's Mail Fraud Conviction

Under the first prong of plain error review, we determine whether the district court erred. Wang objects that the district court erred by applying § 2B1.1 instead of § 2L2.1 to calculate the offense level for his mail fraud conviction under 18 U.S.C. § 1341.[6] He argues that (1) the § 2B1.1(c)(3) cross-reference and (2) its commentary, in light of our decision in *United States v. Velez*, 113 F.3d 1035 (9th Cir. 1997), show error.

The Guidelines are the "starting point and the initial benchmark for the sentencing process." *United States v. Bernardo*, 818 F.3d 983, 985 (9th Cir. 2016) (citations and internal quotation marks omitted). For this reason, "[t]he district court must correctly calculate the recommended Guidelines sentence[.]" *United States v. Hymas*, 780 F.3d 1285, 1292 (9th Cir. 2015) (citation omitted).

---

[6] We reject the Government's suggestion that Wang affirmatively waived his objection. If a defendant has intentionally relinquished or abandoned an objection, we do not review for error, plain or otherwise. *See United States v. Depue*, 912 F.3d 1227, 1232 (9th Cir. 2019) (en banc). We require "actual evidence" that the defendant knew of his rights and nevertheless chose to relinquish them. *Id.* at 1233. Wang's failure to raise his objection to the district court is not actual evidence of intentional abandonment. *Id.* at 1233–34.

The calculation error at issue here requires us to examine the Guidelines. "Our interpretation of the Guidelines 'will most often begin and end with the text and structure of the [g]uidelines' provisions' themselves." *United States v. Cuevas-Lopez*, 934 F.3d 1056, 1061 (9th Cir. 2019) (quoting *United States v. Martinez*, 870 F.3d 1163, 1166 (9th Cir. 2017)). We also may consider commentary that interprets or explains a Guideline. *Martinez*, 870 F.3d at 1166. "[C]ommentary . . . is authoritative unless it . . . is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993); *United States v. Martin*, 796 F.3d 1101, 1108 (9th Cir. 2015). We consider § 2B1.1(c)(3)'s text and commentary, and then address the Government's response.

### A. The § 2B1.1(c)(3) Cross-Reference Text

Section 2B1.1 is the offense Guideline that generally applies to an 18 U.S.C. § 1341 conviction like Wang's mail fraud conviction. U.S.S.G. § 2B1.1; *see also* U.S.S.G. app. A (Statutory Index). Section 2B1.1, however, is subject to certain cross-references that are set forth after § 2B1.1's general provisions. *See* U.S.S.G. § 2B1.1(c)(1)–(4). These cross-references instruct a court to calculate an offense level for a conviction using an offense Guideline other than § 2B1.1 when certain requirements are satisfied. We focus on the § 2B1.1(c)(3) cross-reference.

Section 2B1.1(c)(3) contains three requirements. First, subdivisions 2B1.1(c)(1) and (c)(2)—references for offenses involving firearms, explosives, or arson type crimes—must not apply. U.S.S.G. § 2B1.1(c)(3)(A). Second, the conviction at issue must be "under a statute proscribing false, fictitious, or fraudulent statements or representations generally," which expressly includes 18 U.S.C. § 1341. *Id.* § (c)(3)(B). Third, "the conduct set forth in the count of

conviction [must] establish[] an offense specifically covered by another guideline in Chapter Two[.]" *Id.* § (c)(3)(C). When these requirements are met, the cross-reference instructs a court to "apply that other guideline." *Id.*

We readily conclude that Wang's mail fraud count of conviction met the first and second requirements. Subdivisions (c)(1) and (c)(2) did not apply to Wang's mail fraud conviction, and his conviction was under a general fraud statute.

Wang also satisfied the third requirement because his mail fraud count established a visa fraud offense specifically covered by § 2L2.1. To explain why this is so, we compare the superseding indictment's mail fraud count with the elements of 18 U.S.C. § 1546(a). U.S.S.G. § 2B1.1(c)(3)(C); *see also United States v. Garcia*, 590 F.3d 308, 315 (5th Cir. 2009) ("[A] sentencing court may apply a cross-reference provision under U.S.S.G. § 2B1.1(c)(3) only if the application of that provision is supported by the conduct alleged in the indictment."); *United States v. Genao*, 343 F.3d 578, 583 (2d Cir. 2003) (holding that district court correctly declined to apply § 2B1.1(c)(3) because the indictment did not allege the exact elements of the cross-referenced offense).[7]

A § 1546(a) offense requires that: the defendant (1) knowingly (2) made a false statement (3) that was material (4) and under oath (5) in an application required by

---

[7] We have endorsed this approach in two unpublished dispositions. *See United States v. Davis*, 304 F. App'x 473, 474 (9th Cir. 2008) (explaining that § 2B1.1(c)(3) "is limited to situations where the fraud charge proves all elements of another offense"); *United States v. Kim*, 95 F. App'x 857, 861–62 (9th Cir. 2004) (considering application of § 2B1.1(c)(3) based on the indictment's allegations).

the immigration laws or immigration regulations.  *See* 18 U.S.C. § 1546(a); *see also United States v. Chu*, 5 F.3d 1244, 1247 (9th Cir. 1993).  Here, the Government alleged that Wang knowingly, and for the purpose of his fraudulent scheme, caused I-129 petitions with false statements made under penalty of perjury to be mailed to the USCIS.  These false statements concerned employment information that federal regulations required a Guam-based employer to include in an I-129 petition for an H-2B nonimmigrant visa. *See* 8 C.F.R. § 214.2(h)(6).  Wang falsely represented that his company would pay the Guam prevailing hourly wage to the foreign construction workers for whom he sought H-2B visas.  These allegations established a § 1546(a) offense.

Section 2L2.1 specifically covered the § 1546(a) offense that Wang's mail fraud count of conviction established.  *See* U.S.S.G. § 2L2.1; U.S.S.G. app. A (Statutory Index).  Thus, the district court should have followed the cross-reference and applied § 2L2.1 to this conviction.  The court erred by failing to do so.

## B.  The § 2B1.1(c)(3) Cross-Reference Commentary

Wang also relies on § 2B1.1(c)(3)'s commentary and *Velez* to argue that the district court erred.  We agree.

Section 2B1.1(c)(3)'s commentary explains that, in some instances, offenses involving fraudulent statements are prosecuted under a general fraud statute although a more specific statute covers the offense.  U.S.S.G. § 2B1.1 cmt. n.16.  Additionally, a defendant may be charged under "relatively broad statutes," like 18 U.S.C. § 1341, "primarily as jurisdictional bases for prosecution of other offenses." *Id.* Thus, "[s]ubsection (c)(3) provides a cross-reference to another [offense] guideline . . . in cases in which the defendant is convicted of a general fraud statute, and the

count of conviction establishes an offense involving fraudulent conduct that is more aptly covered by another guideline." *Id.*

We relied on similar commentary in *Velez* to find that a district court committed the same error that Wang claims here. In *Velez*, the defendant was convicted of several offenses that were part of a large-scale immigration fraud scheme. 113 F.3d at 1035–36. Velez sent hundreds of false immigration applications to the federal government, for which he charged applicants fees. *Id.* at 1036. The district court applied § 2F1.1, the then-applicable general fraud guideline, to calculate Velez's offense level. *Id.* at 1037. The court added a 13-level loss enhancement to account for profit and sentenced Velez to a total of 75 months. *Id.* We found error, and thus reversed and vacated Velez's sentences. *Id.* at 1037–39.

We explained that § 2F1.1's commentary directed a court to apply another offense Guideline when the indictment or information setting forth the count of conviction established an offense that another Guideline more aptly covered. *Id.* at 1037 (quoting U.S.S.G. § 2F1.1 cmt. n.13). We determined that § 2L2.1 was "the more applicable guideline" because "[b]y its very title § 2L2.1 concerns false statements relating to naturalization and immigration." *Id.* at 1038. We also relied on § 2L2.1's specific offense characteristics. In particular, we noted that § 2L2.1(b)(1) accounts for profit from an immigration fraud offense and that § 2L2.1(b)(2) accounts for use of up to 100 or more documents. *Id.* We therefore interpreted § 2L2.1's "substantive language [to] appl[y] to large-scale conspiracies," including those "involving fraudulent conduct in immigration matters[.]" *Id.* Although not dispositive, we noted the problems with applying § 2F1.1's

loss level enhancement when the Government is the alleged victim of the defendant's fraud.  *Id.*

*Velez* reinforces our conclusion that the district court erred given § 2B1.1(c)(3)'s materially identical commentary.  Although Wang pleaded guilty to mail fraud under a general fraud statute, immigration visa fraud was at the heart of the scheme underlying his conviction.  For reasons *Velez* set forth, § 2L2.1 more aptly covered the conviction.  *Velez*, 113 F.3d at 1038; *see also United States v. Aragbaye*, 234 F.3d 1101, 1105 (9th Cir. 2000), (concluding that district court properly applied the more specific §§ 2T1.4 and 2T1.9 tax fraud guidelines rather than the general fraud guideline because "the entire scheme was based on filing fraudulent tax returns"), *superseded by statute on other grounds as recognized by United States v. McEnry*, 659 F.3d 893, 899 n.8 (9th Cir. 2011).

## C.  The Government's Response

The Government concedes that Wang's mail fraud count established an offense that § 2L2.1 specifically covered.  Nevertheless, the Government responds that § 2B1.1(c)(3) does not apply to this case because Wang also pleaded guilty to money laundering and willful failure to pay over tax.  The Government further contends that application note 3 to § 1B1.5 is the "more applicable guideline," which the district court did not err in applying.

We fail to see how these other convictions or the district court's treatment of them foreclose the error we find here.  In a multi-count case, the district court must correctly calculate *each* conviction's offense level.  U.S.S.G. § 1B1.1(a)(4); *see also United States v. Cooper*, 886 F.3d 146, 156 (D.C. Cir. 2018) (explaining that a district court must "correctly calculat[e] the offense level for each

conviction"). Section 2B1.1(c)(3)'s text and commentary and our precedent show that the district court erred in calculating the offense level for Wang's mail fraud conviction. Thus, we proceed to the next prong.

## II. The District Court's Error Was Plain

Next, we consider whether the district court's error was plain. For error to be plain, "the legal error must be clear or obvious, rather than subject to reasonable dispute." *Puckett*, 556 U.S. at 135. "An error is plain if it is 'contrary to the law at the time of appeal . . .'" *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005) (en banc) (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)). An appellate case need not answer the precise question to show plain error. *United States v. Joseph*, 716 F.3d 1273, 1280 (9th Cir. 2013). The clear text and structure of a statute or the Guidelines may also suffice to show plain error. *Id.* We find plain error for two reasons that largely follow from our error analysis.

For one, the district court plainly erred based on § 2B1.1's structure and § 2B1.1(c)(3)'s clear text. Subsections (a) and (b) of § 2B1.1 set forth the means to calculate the offense level for an offense to which § 2B1.1 applies in the first instance. U.S.S.G. § 2B1.1(a)–(b). Subsection (c), however, sets forth four cross-references that instruct a court to apply an offense Guideline other than § 2B1.1 depending on the nature of the offense and the cross-reference requirements. *Id.* § 2B1.1(c)(1)–(4). Section 2B1.1's structure demonstrates that although subsections (a) and (b) will generally apply to calculate the offense level for an offense that § 2B1.1 covers, the subsection (c) cross-references may be a necessary component of the proper application of the Guideline.

Here, the district court relied on subsections (a) and (b) to calculate the offense level for Wang's mail fraud conviction, ignoring the cross-references altogether. The district court's failure to account for the cross-references was particularly inapt because the § 2B1.1(c)(3) cross-reference concerns convictions under a general fraud statute. Critically, Wang's mail fraud conviction satisfied the § 2B1.1(c)(3) cross-reference. Thus, pursuant to the cross-reference's clear text, application of § 2L2.1 was necessary to properly calculate the offense level for this conviction.

Second, the district court's application of § 2B1.1 to Wang's mail fraud conviction contravened our precedent. *Velez* interpreted commentary to the general-fraud guideline to find error in a district court's failure to apply § 2L2.1 to an offense concerning an immigration fraud scheme. *See Velez*, 113 F.3d at 1037–39. We note that at least one of our sister circuits found the same error and vacated a sentence for reasons similar to the ones we identified in *Velez*. *United States v. Kuku*, 129 F.3d 1435, 1439–41 (11th Cir. 1997). Although *Velez* did not consider the cross-reference, *Velez* applies to § 2B1.1(c)(3)'s materially identical commentary. Thus, we conclude that the district court's application of § 2B1.1 rather than § 2L2.1 to Wang's mail fraud conviction was contrary to law.

## III. The District Court's Error Affected Wang's Substantial Rights

We next consider whether the error affected Wang's substantial rights. *Ameline*, 409 F.3d at 1078. Wang "must establish 'that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.'" *Id.* (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). "[I]n the ordinary case a defendant will satisfy his burden to show prejudice by

pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1347 (2016).

Properly calculated, Wang's mail fraud conviction has the same offense level—22—that the district court calculated for his visa fraud conviction. Wang correctly calculates an offense level of 20 for his mail fraud conviction pursuant to § 2L2.1. *See* U.S.S.G § 2L2.1(a) (setting a base offense level of 11), (b)(2)(C) (increasing nine levels for use of 100 or more documents). We add two levels given the district court's unchallenged § 3A1.1(b)(1) victim-related adjustment. The resulting 22-offense level is significantly lower than the 29-offense level the district court calculated for Wang's mail fraud conviction pursuant to § 2B1.1.

Although Wang focuses solely on the lower offense level, we must confirm whether his Guidelines range would likely be different as a result. The record shows that it would be. When § 2L2.1 is applied to Wang's mail fraud conviction, the money laundering conviction would have the highest offense level of the Group 1 offenses at 23. This would become Wang's Group 1 offense level.[8] Compared

---

[8] Wang's first case offenses would remain grouped. *See* U.S.S.G. § 3D1.2(d) (instructing that a court should group offenses to which offense Guidelines § 2L2.1 (immigration fraud), § 2S1.1 (money laundering), § 2T1.6 (tax offenses) apply). The Group 1 offense level would remain 23 because Wang's money laundering offense would produce the highest offense level. *Id.* § 3D1.3(b) (directing a court to apply the offense guideline that produces the highest offense level when the counts involve offenses of the same general type to which different guidelines apply).

to the Group 2 offense level, Wang's pre-departure total offense level would be 23. *See* U.S.S.G. § 3D1.4.**[9]**

Based on Wang's Criminal History Category (I), his pre-departure Guidelines range would be 46 to 57 months. *See* U.S.S.G., ch. 5, Sentencing Table. Applying the six-level downward departure, Wang's post-departure range would be 24 to 30 months and thus the starting point for the sentencing on his counts of conviction. This range is well below the one that the district court calculated and used to impose the sentences in both Wang's cases. Thus, we conclude that the district court's error affected Wang's substantial rights.

## IV. The Error Seriously Affected the Fairness, Integrity, or Public Reputation of Judicial Proceedings

Finally, we must consider whether the district court's error seriously affected the fairness, integrity, or public reputation of judicial proceedings, such that we may exercise our discretion to address the error. *Joseph*, 716 F.3d at 1281. "We have regularly deemed the fourth prong of the plain error standard to have been satisfied where . . . the sentencing court committed a legal error that may have increased the length of a defendant's sentence." *United States v. Tapia*, 665 F.3d 1059, 1063 (9th Cir. 2011) (citations omitted). "[T]here is little reason not to correct plain sentencing errors when doing so is so simple a task[.]" *Id.* (quoting *United States v. Castillo-Casiano*, 198 F.3d 787, 792 (9th Cir. 1999), *as amended*, 204 F.3d 1257 (9th Cir. 2000)).

---

**[9]** A total offense level of 23 would result because (1) Wang's Group 2 11-offense level would be nine levels less serious than Wang's Group 1 offense level, *see* U.S.S.G. § 3D1.4(c), and (2) his Group 1 offense level would represent only one unit, *id.* § 3D1.4(a). Thus, no additional levels would be added.

Here, the district court used the high-end—57 months—of the Guidelines range it erroneously calculated by applying § 2B1.1 instead of § 2L2.1 to Wang's mail fraud conviction. The court then imposed 57-month consecutive sentences in Wang's first and second cases, resulting in a 114-month total sentence. For reasons we have already discussed, Wang's Guidelines range is properly calculated as 24 to 30 months. We have no doubt that the plain error we have identified increased Wang's sentences, and we will exercise our discretion to correct the error.

## V. The Application of § 5G1.2 to Wang's Multiple Counts on Remand

In addition to challenging the district court's application of § 2B1.1 instead of § 2L2.1 to his mail fraud conviction, Wang claims that the district court erred by failing to follow the procedure set forth in § 5G1.2 for imposing concurrent or consecutive sentences on multiple counts. Noticing the district court's plain error in applying § 2B1.1 instead of § 2L2.1 to Wang's mail fraud conviction makes it unnecessary to address the specific § 5G1.2 errors Wang claims in the 114-month total sentence the district court imposed. *See Velez*, 113 F.3d at 1037; *see also United States v. Doe*, 705 F.3d 1134, 1154 (9th Cir. 2013) ("[T]he failure accurately to state the Guidelines range at the onset derailed the sentencing proceeding before it even began.").

Nevertheless, we believe it is prudent to account for the errors Wang claims by outlining how the district court generally should approach re-sentencing of Wang's multiple counts on remand pursuant to § 5G1.2. *See United States v. Williams*, 291 F.3d 1180, 1192 (9th Cir. 2002) ("Section 5G1.2 of the Sentencing Guidelines instructs the district court, in general, about when concurrent or consecutive sentences are appropriate when sentencing a defendant on

multiple counts."), *abrogated on other grounds by United States v. Gonzalez*, 506 F.3d 940, 942 (9th Cir. 2007) (en banc).

For one, the district court should expressly identify the total punishment applicable to all Wang's counts in accordance with the proper 24- to 30-month Guidelines range we have identified.  *See* U.S.S.G. § 3D1.5; U.S.S.G. § 5G1.2(b); *see also United States v. Joetzki*, 952 F.2d 1090, 1097 (9th Cir. 1991) (explaining that a court uses the sentencing range that results from the combined offense level and criminal history category to select an appropriate sentence and the chosen sentence becomes the total punishment).[10]     Second, the district court should run concurrently the sentences on all counts of conviction—across Wang's first and second cases—if the sentence the district court imposes on the count carrying the highest statutory maximum is adequate to achieve the total punishment.  *See* U.S.S.G. § 5G1.2(c); *Joetzki*, 952 F.2d at 1097.  Wang's mail fraud conviction under 18 U.S.C. § 1341 has the highest statutory maximum of 20 years.  Third, if the district court imposes a sentence on Wang's mail fraud conviction that is less than the total punishment the district court identifies, then the Guidelines permit the district court to impose a consecutive sentence on another count of conviction "only to the extent necessary to produce a combined sentence equal to the total punishment."  U.S.S.G. § 5G1.2(d).

---

[10] Section 5G1.2(a) is inapplicable because Wang's counts of conviction do not require consecutive terms of imprisonment.  Thus, § 5G1.2(b) applies to the sentencing of Wang's multiple counts of conviction.

We recognize that, notwithstanding the Guidelines range, the district court may vary a sentence based on its consideration of the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Carty*, 520 F.3d 984, 991–92 (9th Cir. 2008) (en banc). We further recognize that "the district court retains discretion under 18 U.S.C. § 3584(a) to sentence either concurrently or consecutively despite the guidelines." *United States v. Pedrioli*, 931 F.2d 31, 32 (9th Cir. 1991) (citing *United States v. Wills*, 881 F.2d 823 (9th Cir. 1989)). We underscore, however, that the district court should start with the Guidelines and keep them in mind during Wang's re-sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007); *Cuevas-Lopez*, 934 F.3d at 1058–59.

## CONCLUSION

We hold that the district court plainly erred when it applied § 2B1.1 instead of § 2L2.1 to Wang's mail fraud conviction. We reverse and vacate Wang's sentences, and remand to the district court. We instruct the district court to apply § 2L2.1 to Wang's mail fraud conviction and to appropriately re-sentence Wang in accordance with § 5G1.2.

**SENTENCES REVERSED AND VACATED; REMANDED for re-sentencing with instructions.**